## J. B. MARSHALL ET AL. *v.* MAYOR OF CITY OF MERIDIAN.

[60 South. 135]

1. MUNICIPAL CORPORATIONS. *Use of public property. Sale. Charter. Code 1906, section 3345.*

   In the absence of legislative authority a municipal corporation is without power to sell or dispose of property held by it for govermental purposes, but where a city's charter empowers it to "purchase and hold real, personal and mixed property and to dispose of it for the benefit of the city," such city can sell a city hall, no longer used as such, where it has provided itself with a new city hall.

2. SAME.

Where the only trust charged upon the property other than the general trust under which all municipal property is held, is that which results from its being dedicated to a public use—when this use lawfully ceases this trust will cease also.

3. MUNICIPAL CORPORATIONS. *Public buildings. Sale of building. Proceeds.*

Where a city is empowered to build a new city hall, it is authorized to use money obtained from the sale of an old city hall for that purpose.

4. SAME.

If special authority to abandon the use of an old city hall were necessary, such authority is clearly conferred, by implication, by an amendment to a city's charter, by which it is authorized to build a new city hall.

5. CODE 1906, SECTION 3345. *Jail. Market.*

It is not obligatory upon a municipality to maintain either a jail or a market house and it has the power to discontinue the use of property occupied as such by virtue of Code 1906, section 3345, so providing, a city is authorized to care for and dispose of its prisoners in ways other than by the maintenance of a jail.

APPEAL from the chancery court of Lauderdale county. HON. SAM WHITMAN, JR., chancellor.

Bill by J. B. Marshall and others against the mayor and board of aldermen of the city of Meridian. From a decree for defendants, complainants appeal.

The facts are fully stated in the opinion of the court.

*Baskins & Welbourn*, attorneys for appellants.

J. M. *McBeath*, C. T. *Williamson* and V. W. *Gilbert*, attorneys, for appellee.

Counsel on both sides filed able and extensive briefs but too long for publication.

Argued orally by *W. E. Baskin*, for appellants and V. W. *Gilbert*, for appellee.

SMITH, J., delivered the opinion of the court.

The city of Meridian having obtained, in May, 1910, an amendment to its charter, by which it was empowered "to erect, construct, build, maintain, repair, furnish and equip a new city hall," and to issue bonds in order to pay therefor, issued and sold bonds to the amount of seventy-five thousand dollars, the money realized therefrom "to be expended," in the language of the resolution providing therefor, "for the construction of a new and suitable city hall, the present city hall being unsightly, dilapidated and inadequate, and not commensurate with the progress of the other improvements of the city; said hall to be constructed of stone, brick, or other suitable substance, the same not to exceed five stories and to contain a council chamber, courtroom, public auditorium, and offices for the officers and departments of the city government." On March 15, 1911, its council adopted an ordinance providing for the sale of the old city hall, which ordinance is as follows:

"Whereas, in the judgment of the mayor and boards of councilmen and aldermen of the city of Meridian, Mississippi, it has become necessary to build a new city hall, and to that end said municipal authorities have heretofore authorized the sale of bonds to the amount of seventy-five thousand dollars; and,

"Whereas, they believe said amount to be insufficient for the construction of a new city hall of the size and character that the public necessity requires; and,

"Whereas, said municipal authorities believe it to be to the best interest of the public to sell the property upon which the present city hall and city jail are now located, together with the buildings thereon situated, for the purpose of raising funds to supplement seventy-five thousand dollars bond issue already voted and authorized, to be sold under the charter ordinance of said city;

"Now, therefore, be it ordained as follows: (1) That the finance committee be and the same are hereby author-

ized and directed to sell the above-mentioned property
at public outcry, at such time and place as said com-
mittee in its discretion may determine, after advertising
the time and place of sale for a period of thirty days in a
newspaper or newspapers, to the highest bidder, said
sale to be consummated upon the following conditions,''
etc.

In order to prevent the sale of this property, appellants
filed their bill in the court below, asking that the sale
thereof be enjoined. On final hearing the injunction
was dissolved and the bill dismissed.

The city owns the lot upon which its present city hall
and jail are located in fee simple, charged with no trust
except such as follows by reason of its having been de-
voted to its present purposes. In this city hall building,
in addition to a municipal court room and offices for the
city officials, there is situated a public market maintained
by virtue of an act of the legislature approved February
29, 1888. Laws 1888, p. 295. The city jail adjoins,
and is on the same lot with, the city hall. The conten-
tion of appellants is that the city holds this property in-
trust for its citizens, and that it is without power to sell it.

In the absence of legislative authority, a municipal
corporation is without power to sell or dispose of property
held by it for governmental purposes. By the city's
charter appellees are empowered to "purchase and hold
real, personal and mixed property, and may dispose of
the same for the benefit of said city." This provision
of the charter clearly gives appellees power to sell property
under some circumstances. It may be that this general
grant of power carries with it no authority to sell property
held and used by the city for governmental purposes,
as to which we express no opinion; but when such prop-
erty has ceased to be used for such purposes, the rea-
sons for the rule prohibiting the sale thereof cease, so
that the rule itself ceases, and thereafter it can be sold
under this general power to sell. There can be no ques-

103 Miss.—14

tion that, under a general grant of power to sell, a city has the power to sell property which it owns not charged with a trust. In the case at bar the only trust charged upon the property, other than the general trust under which all municipal property is held, is that which results from it being dedicated to a public use, and when this use shall lawfully cease this trust will cease also. It is true that the use of this property for public purposes has not in fact ceased, but provision has been made for the building of a new city hall and the sale of the old city hall is but a preliminary thereto, and in aid thereof, and when the new city hall is built the use of the old will cease.

Where a city is empowered to build a new city hall, and the money which can be realized from a sale of its old hall will be of material aid to it in so doing, it ought to have power to sell its old hall for that purpose, and we are aware of no good reason for holding that it has not. In *Ogden City* v. *Bear Lake, etc., Co.*, 16 Utah, 440, at page 453, 52 Pac. 697, at page 699, 41 L. R. A. 305, at page 310, it was said: "A city sometimes has on hand personal and real property not devoted to the use of the public. Fire engines, horses, or other personal property, may become unsuited to the use for which they were designed, and be replaced, and cease to be used. Public buildings may become unfit for the public use, and for sufficient reasons the city may not wish to build on the same lot; and such buildings, and the lots upon which they stand, may be no longer used by the public. The city from time to time may have other classes of property that has ceased to be used, or is not used by the public. All such propeerty of a municipal corporation, not devoted to the public use, may be sold or leased under the general authority to sell or lease, as the public welfare may demand. Such property may be converted into money or other things, and in that form devoted to the use of the public."

If special authority to abandon the use of the present city hall is necessary, such authority is clearly conferred, by implication, by the amendment to the city's charter, by which it is authorized to build a new city hall.

So far as the market house (2 Dillon [5 Ed.] section 701) and jail (Code, sec. 3345) are concerned, it is not obligatory upon the city to maintain either of them; consequently it has full power to discontinue the use of the property in question as such. By section 3345 of the Code, which section is applicable to all municipalities, the city is authorized to care for and dispose of its prisoners in ways other than by the maintenance of a city jail.

*Affirmed.*